1  GREENBERG TRAURIG, LLP
   Allan Z. Litovsky (SBN 183182)
2  (litovskya@gtlaw.com)
   Michaele N. Turnage Young (SBN 247796)
3  (turnageyoungm@gtlaw.com)
   3161 Michelson Drive, Suite 1000
4  Irvine, California 92612
   Telephone: (949) 732-6500
5  Facsimile:  (949) 732-6501
6  Attorneys for Plaintiff and Counter-Defendant
7  CMG Financial Services, Inc.

8

9              UNITED STATES DISTRICT COURT
10   FOR THE CENTRAL DISTRICT OF CALIFORNIA
                 WESTERN DIVISION
11

| | |
|---|---|
| 12  CMG FINANCIAL SERVICES, INC., | **CASE NO. CV11-10344 PSG (MRWx)** |
| 13 | |
| 14              Plaintiff, | **PLAINTIFF AND COUNTER-DEFENDANT CMG FINANCIAL SERVICES, INC.'S SUPPLEMENTAL BRIEF REGARDING THE FEDERAL CIRCUIT'S DECISION IN *CLS BANK INT'L v. ALICE CORP. PTY. LTD.*** |
| 15  vs. | |
| 16 | |
| 17  PACIFIC TRUST BANK, F.S.B., *et al.*, | |
| 18 | |
| 19              Defendants. | Judge:  Honorable Philip S. Gutierrez<br>Ctrm:  880 |
| 20  PACIFIC TRUST BANK, F.S.B., | |
| 21              Counter-Plaintiff, | |
| 22        vs. | |
| 23 | |
| 24  CMG FINANCIAL SERVICES, INC., | |
| 25              Counter-Defendant. | |
| 26 | |

27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................. 1

II.   ARGUMENT...................................................................................... 2

    A.    *CLS Bank* Emphasizes the Lack of any Established Standard as to
       What Constitutes an "Abstract Idea" ......................................... 2

       a.    *CLS Bank* provides no clarity as to the confused, incoherent and
          hotly disputed Section 101 case law regarding "abstract ideas" ....... 2

       b.    Invalidating CMG's Patent While Case Law is Unsettled is
          Irreconcilable With The Presumption of Validity ........................... 3

    B.    Under Any Opinion, the Claims of the '509 Patent are Patent-Eligible ...... 5

       a.    The Lourie Opinion.......................................................... 5

       b.    The Rader Opinion........................................................... 9

       c.    The Remaining Opinions .................................................. 12

    C.    At The Very Least, this Court Should Construe the Claim Terms Prior
       to Ruling on PT's Motion................................................... 14

III.  CONCLUSION.................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*CLS Bank Int'l v. Alice Corp.*,
  __F.3d __, 2013 WL 1920941 (Fed. Cir. 2013) ....................................................passim

*CLS Bank Int'l v. Alice Corp.*,
  484 F. App'x. 559 (Fed. Cir. 2012) ...........................................................1

*Diamond v. Diehr*,
  450 U.S. 175 (1981) ........................................................................8, 12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  __ U.S. __, 132 S.Ct. 1289 (2012) ...............................................................10

*Microsoft Corp. v. i4i L.P.*,
  564 U.S. __, 131 S. Ct. 2238 (2011) ............................................................4

*MySpace, Inc. v. GraphOn Corp.*,
  672 F.3d 1250 (Fed. Cir. 2012) ...........................................................1, 2, 15

## <u>Statutes</u>

35 U.S.C. § 101 ...................................................................................passim

35 U.S.C. § 102 ...................................................................................11, 13

35 U.S.C. § 103 ...................................................................................4, 11, 13

Pursuant to the Court's May 20, 2013 Order (Dkt. No. 113), Plaintiff CMG Financial Services, Inc. ("CMG") respectfully submits this supplemental brief in opposition to Pacific Trust Bank, F.S.B.'s ("PT") Motion for Summary Judgment ("Motion").

## I.   INTRODUCTION

As agreed by the parties in the recently filed joint stipulation regarding the decision of the Court of Appeals for the Federal Circuit ("CAFC") in *CLS Bank International v. Alice Corporation PTY Ltd.* ("*CLS Bank*"), __F.3d __, 2013 WL 1920941 (Fed. Cir. 2013), that decision is directly relevant to the computer-implemented claims of U.S. Patent No. 7,627,509 ("the '509 patent"). In *CLS Bank*, the Federal Circuit was tasked with answering the question of what test should be used when determining when a computer-implemented invention was a patent ineligible abstract idea. *CLS Bank Int'l v. Alice Corp.*, 484 F. App'x. 559 (Fed. Cir. 2012).  Ten CAFC judges could not agree on an answer to that question. Having issued a number of opinions, the deeply divided Court added even more confusion to the Section 101 jurisprudence, which the judges of the same Court have previously characterized as a "murky morass." *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1260 (Fed. Cir. 2012).

The *en banc* panel, which consisted of ten judges, resulted in six opinions, which rendered only one thing undisputed—the ten CAFC judges could not agree on how one should analyze and decide what constitutes an "abstract idea" in the context of Section 101. *See generally*, *CLS Bank*. The over one hundred pages of opinions issued by the deeply divided Federal Circuit reflect the serious inconsistencies and schisms in the relevant case law.  These inconsistent opinions further emphasize that no clear law exists to invalidate CMG's patent under a well-established clear and convincing evidence standard.

Even if the deep disagreements among the CAFC judges can be overcome, the CMG patent does not claim an abstract idea under each of the tests propounded by the multiple opinions in *CLS Bank*. This Court should not invalidate CMG's important patent

1

that protects an invention, which has been credited with playing a major role in allowing CMG to survive the difficult years of the most recent financial downturn.  Thus PT's Motion should be denied.

Even if, despite the absence of any established test, the Court is inclined to consider the subject-matter validity of the '509 patent, the claims of the '509 patent must first be properly interpreted to establish the scope of each claim and what it may and may not preempt.

## II.  ARGUMENT

### A.  *CLS Bank* Emphasizes the Lack of any Established Standard as to What Constitutes an "Abstract Idea"

#### a.  **CLS Bank** *provides no clarity as to the confused, incoherent and hotly disputed Section 101 case law regarding "abstract ideas"*

Well before *CLS Bank* was decided, judges on the Federal Circuit recognized that "[Federal Circuit] opinions spend page after page revisiting our cases and those of the Supreme Court [on abstract ideas], and still we continue to disagree vigorously over what is or is not patentable subject matter." *MySpace, Inc.*, 672 F.3d at 1259. *CLS Bank* was expected to relieve that confusion by answering the following question:

> What test should the court adopt to determine whether a computer-implemented invention is a patent ineligible "abstract idea"; and when, if ever, does the presence of a computer in a claim lend patent eligibility to an otherwise patent-ineligible idea?

*CLS Bank Int'l v. Alice Corp.*, 484 F. App'x. 559 (Fed. Cir. 2012).

Instead, the CAFC's inability to issue a majority opinion discussing the applicable legal standard and the multiple dueling opinions generated by the CAFC judges only

2

intensified the "vigorous disagreement."[1]  Indeed, other than a one-paragraph *per curiam* agreement with the lower court's ultimate conclusion,[2] *CLS Bank* resulted in at least five (and, arguably, six) different opinions as to how to determine whether a patent claim is directed to an "abstract idea."  *See CLS Bank*, 2013 WL 1920941, at *1 ("Per Curiam Opinion"); *id.* at *1-20 ("Lourie Opinion"); *id.* at *20-40 ("Rader Opinion"); *id.* at *40-47 ("Moore Opinion"); *id.* at *47-52 ("Newman Opinion"); *id.* at *52-59 ("Linn Opinion"); *id.* at *59-61 ("Rader Additional Reflections").  Clearly, even if the CAFC judges cannot agree on a clear legal standard for the required analysis, how can anyone analyze what constitutes an "abstract idea" and reach a clear and convincing conclusion to overcome a strong presumption of patent validity?

   **b.**   ***Invalidating CMG's Patent While Case Law is Unsettled is Irreconcilable With The Presumption of Validity***

   Even if this Court were to use any of the tests articulated by any opinion in *CLS Bank*, the claims of the '509 patent would be found patent-eligible. But the practical result of *CLS Bank* is that this Court is now faced with a deep "circuit split" within the binding authority it must follow. This is an impossible task. Absent clarity provided by the Supreme Court either in the *CLS Bank* case (which the Supreme Court is likely to accept, given the deep division among the CAFC judges and the importance of the issue)

---

[1] Indeed, several of the judges emphasized that no opinion commanded a majority. *See, e.g.*, Lourie Opinion at *1 n.1 ("Chief Judge Rader is correct to note that no single opinion issued today commands a majority [.]"); Rader Opinion at *20 n.1 ("No portion of any opinion issued today other than our Per Curiam Judgment garners a majority…. Although a majority of the judges on the court agree that the method claims do not recite patent eligible subject matter, ***no majority of those judges agrees as to the legal rationale for that conclusion***." (emphasis added))

[2] The majority agreed that the Alice's method claims were patent-ineligible. However, only half of the CAFC judges concluded that the system claims were invalid, and the other half of the judges disagreed.  *Per Curiam* Opinion at *1.

3

1    or in another decision, this Court simply has no reliable legal standard to reconsider the

2    strong presumption of validity of CMG's patent.[3]

3        "[A]ll issued patent claims receive a statutory presumption of validity, and that

4    presumption applies when § 101 is raised as a basis for invalidity in district court

5    proceedings." Lourie Opinion at *12. "[A]ny attack on an issued patent based on a

6    challenge to the eligibility of the subject matter must be proven by clear and convincing

7    evidence." Rader Opinion at *33 (citing *Microsoft Corp. v. i4i L.P.*, 564 U.S. __, 131 S.

8    Ct. 2238, 2242 (2011)).

9        The *CLS Bank* decision, for all its effort, does not provide this court with a

10   precedential test to use to determine whether PT has met its heavy burden under the clear

11   and convincing evidence standard. Chief Judge Rader's Opinion provides an important

12   warning regarding the pre-1952 standard of "inventiveness" and what happens when no

13   test is used or available:

14       These standardless terms and tests created wildly disparate
         approaches to determine sufficiency for 'invention.' Judge Rich
15       observed that with 'invention' as the test, judges did whatever
         they felt like doing according to whatever it was that gave the
16       judge his feelings—out of the evidence coupled with his past
         mental conditioning—and then selected those precedents which
17       supported his conclusions.
18

19   Rader Opinion at *23 (internal citations and quotations omitted). Only upon

20   Congressional action was the situation remedied by the addition of 35 U.S.C. § 103.

21   Rader Opinion at *24.

22

23   _____

24   [3] Contrary to PT's assertions, see Motion at 1 n.2, this Court is *not* required to
     determine patent eligibility under Section 101 prior to adjudication of issues under, e.g.,
25   Sections 102 or 103.  *See* Lourie Opinion at *12 (rejecting notion that Section 101
     questions must be decided before other issues, as "District Courts are rightly entrusted
26   with great discretion to control their dockets and the conduct of proceedings before them,
27   including the order of issues presented during litigation.").

28

4

Like the previous disarray surrounding the standards for invention, the standards for what is patent-eligible are similarly confused. *See generally*, *CLS Bank*. It is, therefore, impossible for PT to show by clear and convincing evidence that CMG's patent is invalid. That is, no evidence can be clear and convincing where the very test for what evidence is needed is not defined. On such shaky grounds, this Court should not invalidate a U.S. patent that enjoys a strong presumption of validity.

**B.     Under Any Opinion, the Claims of the '509 Patent are Patent-Eligible**

None of the tests articulated in the multiple *CLS Bank* decision has the precedential power.  In addition, it is impossible to predict which, if any, such test the Supreme Court may eventually  adopt when it addresses the key issue raised in *CLS Bank*. However, under any test described in *CLS Bank*, the '509 patent claims cover patentable subject matter and not an unpatentable "abstract idea."

**a.     *The Lourie Opinion*[4]**

The Lourie Opinion describes the "guideposts" for formulating a test for whether a patent claim is improperly directed toward an abstract idea.

First, the patent should not "preempt the fundamental tools of discovery."  Lourie Opinion at *8.  That is:

> [T]he proper focus is not preemption *per se*, for some measure of preemption is intrinsic in the statutory right granted with every patent to exclude competitors, for a limited time, from practicing the claimed invention. *See* 35 U.S.C. § 154.  Rather, the animating concern is that claims should not be coextensive with a natural law, natural phenomenon, or abstract idea; a patent-eligible claim must include one or more substantive limitations that, in the words of the Supreme Court, add "significantly more" to the basic principle, with the result that the claim covers significantly less. Thus, broad claims do not necessarily raise § 101 preemption concerns, and seemingly

---

[4] The Lourie Opinion was joined by Judges Dyk, Prost, Reyna, and Wallach.

> narrower claims are not necessarily exempt. What matters is whether a claim threatens to subsume the full scope of a fundamental concept, and when those concerns arise, we must look for meaningful limitations that prevent the claim as a whole from covering the concept's every practical application.

*Id.*

Second, the test cannot be "overly formalistic" such that a shrewd patent prosecutor may "circumvent the basic exceptions to § 101 using, for example, highly stylized language." Finally, there cannot be "rigid line drawing"; instead, there must be a flexible, claim-by-claim analysis. *Id.* at \*9.

Having discussed the "guideposts," the Lourie Opinion then sets forth the test it would employ. First, it would ask "whether the claimed invention fits within one of the four statutory classes[5] set out in § 101." *Id.* If so, the Court must ask "whether the claim raises § 101 abstractness concerns at all." *Id.* If the concerns are raised, the court must "identify and define whatever fundamental concept appears wrapped up in the claim so that the subsequent analytical steps can proceed on a consistent footing." *Id.* Once that "concept" is defined, the court then determines whether the claims completely preempt the use of that fundamental concept (which would be an unpatentable abstract idea) or instead is such that "the balance of the claim….narrow[s], confine[s], or otherwise tie[s] down the claim so that…it does not cover the full abstract idea itself." *Id.* at \*10.

The claims of the '509 patent pass the Lourie Opinion's test. First, it is clear that the claims are directed at machines (claims 1-2, 7-9, and 11, the system claims) or processes (claims 3-6 and 10, the method claims). This cannot be debated.  For purposes of following Judge Lourie's approach only, CMG is willing to accept that it is appropriate to examine the '509 patent claims for abstractness concerns. However, PT's Motion fails to clearly identify what "concept" it claims to be an abstract idea preempted

---

[5] The four statutory classes are "process, machine, manufacture, or composition of matter[.]" 35 U.S.C. § 101.

*CMG SUPPLEMENTAL BRIEF RE CLS BANK DECISION.*

1    by the '509 patent.[6] Having failed to clearly and unambiguously define the specific

2    claimed "abstract idea," PT's Motion fails the test proposed by Judge Lourie. CMG

3    disputes that any such fundamental concept is preempted by the '509 patent.

4         Even assuming, for argument's sake, that the concept at issue is "the idea of

5    paying down a loan when funds are available and then borrowing additional funds later

6    when they may be needed," this concept is *not* preempted by the claims of the '509

7    patent. Indeed, the lack of preemption is easily demonstrated by examples. If PT were

8    correct in its description of the '509 patent, the patent would preempt credit card

9    accounts and lines of credit accounts, which allow borrowers to "pay[] down a loan when

10   funds are available and then borrow[] additional funds later when they may be needed."

11   Motion at 1. That is plainly *not* what CMG's patent covers or preempts. PT's Motion

12   fails to advance any evidence to the contrary.

13        Instead of preempting any fundamental concepts, CMG's patent contains an

14   additional "inventive concept" that is "a product of human ingenuity"—allowing an

15   integrated account with the benefits of both a checking and line of credit account which,

16   through automatic manipulations of credits and debits as needed, leads to the best

17   possible result for the customer: the minimization of interest payments. '509 patent at

18

19       [6] Sometimes, PT defines the claimed abstract idea as "the idea of paying down a

20   loan when funds are available and then borrowing funds later when they may be needed." Motion at 1, ll. 5-9; at 14, ll. 17-20; at 15, ll. 10-12. Then, PT argues that the "abstract

21   idea" preempted by the '509 patent is "associating a checking account with a line of credit mortgage account to permit the transfer of funds between the two accounts."

22   Motion at 2, ll. 12-15. In other instances, PT argues that the idea preempted by each of

23   the independent claims of the '509 patent is "the business method of transferring money back and forth between two accounts to reduce interest expense." Motion at 10, ll. 3-5; at

24   13, ll. 1-3; at 15, ll. 18-20; at 19, l. 25 - 20, l. 1. PT also argues that the abstract idea is the

25   very idea of "integrating accounts." Motion at 18, ll. 18-21. In other parts of its brief, PT

26   argues that claims of the '509 patent constitute a combination of claimed "abstract ideas," i.e. a number of claimed "abstract ideas" are combined, per PT, in the claims of the '509

27   patent. Motion at 15, l. 25 - 16, l. 3.

28

claims.[7] Unlike the claims at issue in *CLS Bank*, the claims here are not "untethered from any real-world application." Lourie Opinion at *13. Instead, the claims are directed towards an *application* of the purported "concept" PT claims is embodied in the patent.

The CMG patent claims are not similar to the claims at issue in *CLS Bank*. For example, the system of claim 1 of the CMG patent comprises, *inter alia*: (i) an integrated account consisting of a line of credit account and a dedicated checking account; (ii) a mortgage payment means that is associated with these accounts that automatically and simultaneously moves funds from the checking and line of credit account so long as funds are available; and (iii) an integrated account that automatically moves money from the line of credit account to the checking account when the funds are needed. '509 patent at claim 1. These limitations are "nontrivial" and they significantly "narrow the claims relative to the abstract idea they embrace." Lourie Opinion at *14.[8] The method claims, see, e.g., '509 patent at claim 3, are similarly limited.

By applying the concept of paying-down-when-funds-are-available-and-borrowing-funds-when-needed in the integrated and automated accounts and in the particular manner as described by the claims of the '509 patent, the customer gets what she would not otherwise have: the minimal interest payment for any given day. This

---

[7] This is no different than the automated and patentable process in *Diamond v. Diehr*, 450 U.S. 175 (1981) which *applied* an abstract concept (the Arrhenius equation) automatically and repeatedly to achieve the best possible result. As recognized by the Lourie Opinion, this step of "constantly measuring" (or in the case at hand, constantly moving money) was said to be new in the art (although the method to measure was known), and thus "because the applicant claimed a specific application, rather than an abstract idea in isolation, the claims satisfied § 101." Lourie Opinion at *6-7.

[8] This is unlike the claims at issue in *CLS Bank*. There, the limitations of the claims merely added speed and efficiency without any effect *other than* speed and efficiency. *See* Lourie Opinion at *14. Here, although the claim limitations add speed and efficiency, the requirements of the claims of the '509 patent also add something *more*: the minimization of daily interest accrual. There was no analogous benefit as a result of the limitations at issue in *CLS Bank*. *See id.*

8

practical result (more money in the bank) is not "disembodied" and "untethered from any real-world application." Lourie Opinion at *13.[9] For the claims of the CMG patent, the precise moment chosen to execute the transfers makes a "significant difference is in the ultimate application of the abstract idea." *Id.* This is directly opposite to the claims at issue in *CLS Bank*, where a limitation providing for end-of-day reconciliation made no impact as to the scope of the claims. *See* Lourie Opinion at *15. No evidence submitted by PT contradicts this result. Thus under the Lourie test, the '509 patent claims are not abstract.

  **b.   *The Rader Opinion*[10]**

  The Rader Opinion begins with the same step as the Lourie Opinion: that "any new and useful process, machine, composition of matter, or manufacture, or an improvement thereof, is eligible for patent protection." As mentioned, that the claims of the '509 patent fall with these broad categories is undisputed.

  However from there, the Rader Opinion diverges from the Lourie Opinion. First, the Rader Opinion notes that the court must consider the claim *as a whole*. Rader Opinion at *26. This is because "[a]ny claim can be stripped down, simplified, generalized, or paraphrased to remove all of its concrete limitations, until at its core, something that could be characterized as an abstract idea is revealed." *Id.* When the claim

---

  [9] The Lourie Opinion relies on *In re Alappat*, 33 F.3d 1526, 1544 (Fed. Cir. 1994) for the proposition that an idea is abstract if it is disembodied. Lourie Opinion at *13. However, the *In re Alappat* Court stated that an idea was *disembodied* if it were *abstract*. *In re Alappat*, 33 F.3d at 1544. Thus, unfortunately, the Lourie Opinion is not very helpful in this regard as it resorts to the circular logic of abstract-because-disembodied-because-abstract to reach the result of invalidating the claims at issue in *CLS Bank*. Lourie Opinion at *13. Accordingly, what is "disembodied" is as undefined as what is "abstract" and, thus, the concept of "disembodiment" provides no sensible guidance for reaching a reliable conclusion under the clear and convincing standard of proof.

  [10] The Rader Opinion was joined in full by Judge Moore, and as to all except part VI by Judges Linn and O'Malley. Section VI concerned whether or not the method claims were patent eligible. *See* Rader Opinion at *37-39.

as a whole is considered, the question thus becomes "whether the claim seeks to patent an idea itself, rather than an application of that idea." *Id.* at \*27. That is, "[t]he relevant inquiry must be whether a claim includes *meaningful* limitations restricting it to an application, rather than merely an abstract idea." *Id.* (emphasis in original).

According to the Rader Opinion, a claim is not meaningfully limited "if it merely describes an abstract idea or simply adds 'apply it'" or "covers all practical applications of an abstract idea," *i.e.*, "preempts" use of that idea. *Id.* at \*28 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, __ U.S. __, 132 S.Ct. 1289, 1294, 1301-02 (2012) ("*Prometheus*")). The Rader Opinion clarified, however, that "all patents 'preempt' some future innovation in the sense that they preclude others from commercializing the invention without the patentee's permission." *Id.* This type of preemption does not make a claim invalid. *See id.*

In contrast to claims that are not meaningfully limited, a claim *is* meaningfully limited if "it requires a particular machine implementing a process or a particular transformation of matter." *Id.* at \*29. A claim is also meaningfully limited where "in addition to the abstract idea, the claim recites added limitations which are essential to the invention," *i.e.*, the limitations "are central to the solution itself." *Id.*

The Rader Opinion also emphasized what should *not* be a part of the analysis of the abstract idea exception. *Id.* at \*30-31. "The eligibility inquiry is not an inquiry into obviousness, novelty, enablement, or any other patent law concept. Each section plays a different role and no one section is more important than any other." *Id.* at \*31. Based on the multiple Supreme Court pronouncements stating the same, the Rader Opinion concluded that "the Supreme Court's reference to 'inventiveness' in *Prometheus* must be read as shorthand for its inquiry into whether implementing the abstract idea in the context of the claimed invention *inherently requires* the recited steps." *Id* (emphasis added).

The claims of the '509 patent pass the Rader Opinion's test. First, each claim, *as a whole*, contains meaningful limitations that are essential to the invention. Indeed, the

1   invention, by using integrated checking and line of credit accounts and by automatically

2   shifting balances based on the needs of the customer, results in the minimal interest

3   payment to the customer. '509 patent at claims. This result cannot be achieved absent the

4   *specific limitations* of the '509 patent claims. Even assuming that PT has clearly and

5   unambiguously defined, which it has failed to do, the allegedly preempted concept (see

6   n.6, above)—transferring money from one account to another to reduce interest expense

7   and free up available credit—does not *inherently require* integrated accounts, automatic

8   debiting and crediting, automatic payments, and dedicated checking and line of credit

9   accounts. These limitations are essential if a customer seeks to achieve the minimal

10  interest payment on a line of credit mortgage. Indeed, the result of PT's presumed

11  "concept" is *not* the *minimal* interest payment; it is just, at best, a *reduction* in the interest

12  payment. Precisely because of the claimed method and systems' limitations is the

13  solution of minimal payments achieved. Thus the claims are patent eligible. *See* Rader

14  Opinion at *29.

15      PT's Motion must fail for a second reason—it impermissibly conflates the analysis

16  under Section 101 with the analyses under other sections, such as 102 and 103. *See, e.g.*,

17  Motion at 14 (arguing that a feature of certain claims is "not novel").[11] This is exactly

18  what the Rader Opinion warns the court should not do. Rader Opinion at *32.

19      Finally, PT's argument that the claimed method and systems can be accomplished

20  in a less successful manner by pen and paper misses the point. Motion at 16. As the

21  Rader Opinion recognized, the Supreme Court has found that "breaking the known steps

22  into tiny mathematical calculations that advanced a known function beyond prior

23  capabilities" can render a claim patent eligible, even where it incorporates an admittedly

24

25      [11] In addition, although PT's expert Dr. Lea also provides an irrelevant opinion

26  regarding the novelty of the '509 patent (*See* Dr. Lea's Expert Report, Dkt. No. 52 at

27  ¶¶ 5-6), he fails to provide any opinions as to what constitutes the claimed "abstract

28  idea."

1  known abstract idea, such as the Arrhenius equation (or the reduction of interest

2  payments, as here). Rader Opinion at *33 (citing *Diehr*, 450 U.S. at 179)). CMG's

3  patented systems and methods do just that. A customer, by using the automatic processes

4  in conjunction with the integrated accounts and with all the other limitations of the

5  claims, achieves something that was not otherwise possible: minimization of interest

6  payments at any given moment.

7         **c.**    ***The Remaining Opinions***

8         Each of the remaining opinions—the Moore Opinion, the Newman Opinion, and

9  the Linn Opinion—support the denial of PT's motion.

10         **i.**      **The Moore Opinion**[12]

11         The Moore Opinion discusses the myriad problems in the case law surrounding

12  Section 101. *See* Moore Opinion at *40-44. Then, the Moore Opinion, which discusses

13  only system claims, expresses the belief that system claims with structural limitations

14  which require certain components "are precisely the sort of 'inventive concept' that

15  meaningfully limits the claim, preventing it from 'tying up' the underlying abstract idea

16  itself." *Id.* at *43. That is, "a structurally defined machine is more than a method claim

17  rewritten in system form. It is a practical application of the underlying idea, limited to the

18  specific hardware recited and the algorithms disclosed to perform the recited functions."

19  *Id.* at *44.

20         As shown by CMG's briefing regarding claim construction, see Dkt Nos. 62 and

21  86, the system claims of the '509 patent require the use of a computer. They also require

22  a specific structure, in that they require that accounts are related in a defined way. *See,*

23  *e.g.*, '509 patent at claim 1 (describing how the accounts must be related). "The computer

24  in the system claims is the entire detailed 'solution,' without which it would be

25  impossible to achieve the invention's purpose." Moore Opinion at *46. Thus under the

27         [12] The Moore Opinion was joined by Judges Rader, Linn, and O'Malley.

Moore Opinion, the system claims of the '509 patent are clearly not "abstract ideas" and, instead, are patent eligible.

### ii.    The Newman Opinion

The Newman Opinion found that both the method and system claims of the patent-in-suit in *CLS Bank* were not "abstract ideas."  The Newman Opinion offers a simple test: "when the subject matter is within the statutory classes in Section 101, eligibility is established."[13] Newman Opinion at *52. As discussed, there can be no debate that the method claims of the '509 patent are "processes" within the meaning of the statute. And there can be no debate that the system claims present "machines," when they are properly interpreted to require computers or to require all of their structural limitations. Thus according to the Newman Opinion, the claims of the '509 patent are patent-eligible.

### iii.    The Linn Opinion[14]

Finally, the Linn Opinion, rather than offering an additional test, states that method and system claims rise or fall together. Linn Opinion at *53. However, it would find the method claims patent eligible based on the constructions given to them by the district court, which held for purposes of summary judgment that the claims required the use of a computer. Linn Opinion at *57.

The method and system claims at issue here are no different. They require the use of a computer to achieve their intended result. *See* CMG's Claim Construction Briefing, Dkt. Nos. 62 & 86. Thus under the Linn Opinion, all claims are patent-eligible, when they are properly considered as a whole with all of their limitations. "While the abstract idea at their heart may be [the practice of transferring money from one account to

---

[13] Unless the subject is a law of nature of natural phenomenon, there may not be a need to consider anything else under Section 101 because any "fundamental concept," which, by definition, must be known, would be patent-ineligible under Sections 102 or 103.

[14] The Linn Opinion was joined by Judge O'Malley.

1  another], the claims here are directed to very specific ways of doing that….they do not

2  preempt all commercial uses or applications of that idea." *Cf.* Linn Opinion at *58.

3  **C.     At The Very Least, this Court Should Construe the Claim Terms Prior to Ruling on PT's Motion**

4

5       Even if this Court is not convinced that the claims of the '509 patent do not

6  preempt an abstract idea, this Court should construe the claims of the '509 patent prior to

7  determining whether the claims are directed at an abstract idea or instead are directed at a

8  patent-eligible application of that idea. This is for two reasons.

9       First, it would seem that at least seven Federal Circuit judges in *CLS Bank* believe

10 that claim construction should normally precede any ruling as to whether claims are

11 patent eligible. *See* Lourie Opinion at *9 ("Although not required, conducting a claim

12 construction analysis before addressing § 101 may be especially helpful [in determining

13 the purported abstract idea that is preempted] by facilitating a full understanding of what

14 each claim entails."); *cf.* Linn Opinion at *53-54 (because no claim construction had been

15 conducted, "the trial court was, thus, required to read into the claims whatever limitations

16 [the patentee] asserted a skilled artisan would assume they possessed.").

17      Here, the parties vigorously dispute the meanings of claim terms. *Compare* CMG

18 Claim Construction Briefing, Dkt. Nos. 62 & 86 *with* PT's Claim Construction Briefing,

19 Dkt. No. 64. Granting PT's summary judgment on Section 101 grounds without

20 determining the subject matter of the claims is contrary to each of the tests in *CLS Bank*

21 and the Supreme Court precedents they are based upon.

22      Second, claim construction would determine the scope of the claims, aiding this

23 Court in its evaluation of PT's Motion. As discussed in Section II.A, *supra*, system

24 claims in *CLS Bank* were only invalidated because no opinion commanded a majority.

25 Indeed, five members of the panel considered the system claims, which involved a

26 computer, to be patent-eligible. *See* Moore Opinion at *44-47; Newman Opinion at *48-

27 53. The '509 patent contains system claims which include similar machine limitations, as

28 would be understood by a skilled artisan, that made the claims in *CLS Bank* patentable to

14

1   five members of the *CLS Bank* panel. *See* CMG Claim Construction Briefing, Dkt. Nos.
2   62 & 86. If this Court considers it helpful, CMG would be happy to submit a
3   supplemental brief regarding its proposed claim constructions, directly discussing how
4   and why the claims of the '509 patent are computer-implemented.

### III.   CONCLUSION

6          Although the *en banc* Federal Circuit had an opportunity, none of the multiple *CLS*
7   *Bank* opinions has changed the previous guidance that courts should "avoid reaching for
8   interpretation of broad provisions, such as Section 101 . . ." *MySpace Inc.*, 672 F.3d at
9   1261. That guidance is still valid and, perhaps, it was even amplified by the deep intra-
10   CAFC split demonstrated by the *CLS Bank* decision. CMG's patent enjoys a strong
11   presumption of validity. This Court should not invalidate CMG's valuable patent rights
12   in the absence of (i) any established legal test for what constitutes an "abstract idea" and
13   (ii) any evidence to satisfy PT's burden of proving invalidity under the clear and
14   convincing standard. Even if this Court were to apply any of the competing tests
15   announced in the *CLS Bank* decision, the CMG patent is not invalid under any of such
16   tests. Thus, PT's Motion for Summary Judgment should be denied. However, if this
17   Court is inclined to analyze the '509 patent claims under any Section 101 test, a claim
18   construction analysis should be conducted first to determine the true scope of each of the
19   '509 patent claims.

21          DATED:  May 28, 2013

                                            GREENBERG TRAURIG, LLP
22                                          By /s/ Allan Z. Litovsky
23                                          Allan Z. Litovsky
                                            Michaele N. Turnage Young
24                                          Attorneys for CMG Fin. Servs., Inc.

15