UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

Present: The Honorable Philip S. Gutierrez, United States District Judge

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(In Chambers) Order GRANTING Defendant's Motion for Summary Judgment**

Before the Court is Defendant's Motion for Summary Judgment. (Dkt. No. 55.) The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court GRANTS the Motion.

I.    Background

On December 14, 2011, Plaintiff CMG Financial Services, Inc. ("Plaintiff") filed a Complaint against Defendant Pacific Trust Bank, F.S.B. ("Defendant"), claiming infringement of its U.S. Patent No. 7,627,509 ("'509 Patent").

On February 6, 2012, Defendant moved to dismiss the Complaint on the grounds that the '509 Patent is not patent-eligible. (*See* Dkt. No. 11.) On April 16, 2012, the Court denied the Motion, noting that courts "are better able to evaluate patent eligibility after considering evidence" and issues that would be better determined through the development and presentation of evidence included "whether the process of the '509 Patent is capable of being performed with pen and paper, whether the process integrates the operation of a machine, and whether the '509 Patent claims have been part of the banking industry for years." (Apr. 16, 2012 Order, Dkt. No. 20 at 4.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

On May 4, 2012, Defendant filed its Answer and Counterclaim. (Dkt. No. 26.) Defendant denied the material allegations in the Complaint and counterclaimed that the '509 Patent is invalid, seeking a declaratory judgment to that effect. (*Id.* at 8.) Plaintiff filed its Answer to the Counterclaim on May 24, 2012. (Dkt. Nos. 29, 32.)

On October 29, 2012, Defendant filed the instant Motion for Summary Judgment, arguing that the '509 Patent is invalid as a matter of law, as well as a Statement of Uncontroverted Facts and Conclusions of Law, the Declaration of Dr. Michael Lea, with attached Exhibits A through C, and Request for Judicial Notice, with attached Exhibits A through C. (Dkt. Nos. 55-58.)

On November 5, 2012, Plaintiff filed its Amended Opening Claim Construction Brief, along with Exhibits A through L.[1] (Dkt. Nos. 62, 63.) On November 16, 2012, Defendant filed its Responsive Claim Construction Brief, Declaration of Dr. Michael Lea, with attached Exhibit A, the Declaration of Amy C. Quartarolo, with attached Exhibits A through S, and Objections to Evidence Submitted by Plaintiff. (Dkt. Nos. 64-67.)

On November 19, 2012, Plaintiff filed an Ex Parte Application for Order Denying the Motion for Summary Judgment as Premature, or in the Alternative, for an Order Striking the Expert Witness Declaration of Dr. Michael Lea, with supporting documents. (Dkt. No. 68) The Court denied the Ex Parte Application on November 21, 2012. (Dkt. No. 74.)

Plaintiff filed Opposition to the Motion for Summary Judgment on November 26, 2012, in addition to the Declaration of David Zacharias, the Declaration of Michaele N. Turnage Young, the Declaration of Douglas Nesbit, Objections to Evidence submitted by Defendant, Statement of Genuine Issues, and Request for Judicial Notice with attached Exhibits. (Dkt. Nos. 76-83.)

The Court entered an Order on November 28, 2012, requiring the parties to submit supplemental briefing regarding the import of the Federal Circuit's decision in *PerkinElmer, Inc. v. Intema Ltd.*, 496 F. App'x 65 (Fed. Cir. Nov. 20, 2012), on the pending Motion for Summary Judgment. (Nov. 28, 2012 Order, Dkt. No. 84.)

---

[1]  On November 3, 2012, Plaintiff filed its Opening Claim Construction Brief, but made a mistake when filing it electronically. (*See* Dkt. Nos. 60, 61.) Plaintiff then submitted an Amended Claim Construction Brief on November 16, 2013. (*See* Dkt. No. 62.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|----------|------------------------|------|-----------------|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

On November 30, 2012, Plaintiff filed its Reply in support of its Claim Construction Brief, with the Declaration of David Zacharias and Exhibits 1 and 2. (Dkt. No. 86.)

In response to the Court's November 28, 2012 Order, the parties filed their supplemental briefs on December 19, 2012. (Dkt. Nos. 87-89.)

Defendant filed its Reply in support of the Motion for Summary Judgment on January 14, 2013, as well as evidentiary objections and its response to Plaintiff's Statement of Genuine Issues. (Dkt. Nos. 90-92.)

On May 17, 2013, the parties filed a joint stipulation for leave to submit supplemental briefing regarding the import of the Federal Circuit's decision in *CLS Bank Int'l v. Alice Corp. PTY Ltd.*, 717 F.3d 1269 (Fed. Cir. 2013), on the pending Motion for Summary Judgment. (Dkt. No. 112.) The Court granted the stipulation. (Dkt. No. 113.) The parties filed their supplemental briefs on May 28, 2013. (Dkt. Nos. 116, 117.) The parties filed notices of supplemental authority on June 5, 6, and 21, 2013. (Dkt. Nos. 119, 120, 122, 124.)

On June 24, 2013, the Court ordered the parties to submit supplemental briefing on the Federal Circuit's decision *Ultramercial, LLC v. Hulu, LLC*, 722 F.3d 1335 (Fed. Cir. 2013). (Dkt. Nos. 125-127.) The parties filed timely supplemental briefs. (Dkt. Nos. 129, 131, 133.)

On December 9, 2013, the Court entered an Order staying Defendant's Motion for Summary Judgment pending the Supreme Court's review of the Federal Circuit's en banc opinion in *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269 (Fed. Cir. 2013). (Dec. 9, 2013 Order, Dkt. No. 140; *see also* Dkt. No. 142.)

On January 30, 2014, Plaintiff moved the Court to lift the stay, but the Court denied the request on March 4, 2013. (Dkt. Nos. 143-145, 149-151.)

On June 19, 2014, the Court re-opened the action and ordered further briefing regarding the Supreme Court's decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. __, 134 S. Ct. 2347 (2014). (Dkt. No. 152.) Defendant filed its supplemental brief on July 10, 2014 (hereinafter "Def. Supp. Br."). (Dkt. No. 155.) Plaintiff filed its supplemental brief on July 18, 2014 (hereinafter "Pl. Supp. Br."). (Dkt. No. 156.) The Court took the Motion for Summary Judgment off calendar and under submission on August 15, 2014. (Dkt. No. 163.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10344 PSG (MRWx) | | Date | August 29, 2014 |
|---|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | | |

II.   Legal Standard

Federal Rule of Civil Procedure 56(c) establishes that summary judgment is proper only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, and "may not rest upon mere allegations or denials of his pleading."  *See id.* at 248, 257 (citations omitted).  A non-moving party who bears the burden of proving at trial an element essential to its case must sufficiently establish a genuine dispute of fact with respect to that element or face summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Such an issue of fact is a genuine and material issue if it cannot be reasonably resolved in favor of either party and may affect the outcome of the suit. *See Anderson*, 477 U.S. at 248, 250-51.

If the moving party seeks summary judgment on a claim or defense for which it bears the burden of proof at trial, the moving party must use affirmative, admissible evidence.  Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue.  *See* Fed. R. Civ. P. 56(e).

III.   Uncontroverted Facts

The following material facts are supported adequately by admissible evidence and uncontroverted.  They are "admitted to exist without controversy" for the purposes of this Motion.  *See* L.R. 56-3.

The '509 Patent, which was issued on December 1, 2009, is entitled "Home Ownership Payment System and Method."  (*See* '509 Patent.)  According to the Abstract, the Patent is directed to:

> A system and method for providing a line of credit to a mortgagee, while simultaneously paying off the mortgage loan of the mortgagee, by setting up an integrated account comprised of funds periodically deposited therein by the mortgagee with mortgage

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

payment means associated with the account for paying down the mortgage. The account provides a line of credit to the mortgagee based on the equity the mortgagee has in the predetermined value of the property covered by the mortgage, and means are provided for withdrawal of funds from the account by the mortgagee.

(*Id.* at Abstract.) The background section of the Patent explains that before the '509 Patent, there were no payment plans that "[replace] one's home mortgage and the mortgagee's checking account and which maintains all of the various types of transactions offered by a checking account throughout such integration." (*Id.* at col. 1, ll. 23-26.) The '509 Patent also "allows for fully integrated and fully transactional checking account features (direct deposit, electronic transfers, unlimited checking, ATM access, point-of-sale access, online bill payment, online account access, etc[.]) which are critical to maximizing the amount of unused cash that one can apply to reduce one's loan balance and save interest." (*Id.* at col. 3, ll. 5-10.)

The '509 Patent contains eleven claims.[2] (*Id.* at col. 4 l. 6 – col. 6 l. 32.) Of the eleven Claims, Claims 1, 3, and 11 are independent claims and the remaining eight claims are dependent claims. (*Id.*) Independent Claims 1 and 11 describe systems while independent Claim 3 describes a method. (*Id.*)

Claim 1, an independent system claim, describes:

A system for providing an integrated line of credit mortgage account and checking account to a mortgagee, while simultaneously paying off the mortgage loan balance of the mortgagor, comprising:

an integrated account consisting of a line of credit mortgage having a line of credit account balance and integrated with a dedicated checking account having a checking account balance independent of said line of credit account balance comprised of funds periodically deposited therein by said mortgagee;

---

[2] Below, we include the complete text of each Claim for ease of reference. We note that the below recitation reflects the corrections contained in the '509 Patent's Certificate of Correction, dated December 1, 2009.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|----------|------------------------|------|-----------------|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

> mortgage payment means associated with the integrated account paying down the mortgage balance of said mortgagee upon depositing of funds into said integrated account therein to debit the checking account balance by the amount of funds automatically moved and crediting the line of credit account balance;

> said integrated account providing both a line of credit account, secured by the mortgagee's property and based on the equity said mortgagor has in the predetermined value of the mortgagee's property, and an integrated checking account to said mortgagee with said integrated account providing for said funds to be deposited into said checking account of said integrated account;

> said integrated account having means for moving said funds simultaneously and automatically from said checking account into said line of credit of said integrated account after the depositing of said funds into said checking account;

> means associated with both said line of credit account and said checking account allowing withdrawal of funds from said integrated account by said mortgagee in order to pay other living expenses by automatically transferring funds from said line of credit account to said checking account to fund withdrawals or debits from said checking account to credit checking account balance and debit the line of credit account balance by said transfer amount.

*(Id.* at col. 4, ll. 6-42.)

Claim 2, a dependent system claim, describes:

> In the system of claim 1, wherein said line of credit account has a limit and said means for allowing withdrawal of funds includes funds withdrawal limiting means for allowing said withdrawal from said line of credit account up to said line of credit limit.

*(Id.* at col. 4, ll. 43-47.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

Claim 3, an independent method claim, describes:

A method for providing the payoff of a loan of a mortgage holder in an expedited manner comprising the steps of:

> setting up an integrated account, consisting of a line of credit mortgage integrated with a dedicated checking account;
>
> paying down the mortgage balance of said mortgage holder with funds periodically deposited into said integrated account by said mortgage holder;
>
> providing both a line of credit and a checking account to said mortgage holder based on the equity said mortgage holder has in the predetermined value of the property covered by the mortgage of said mortgage holder;
>
> providing for funds to be deposited into said checking account of said integrated account;
>
> moving said funds simultaneously from said checking account into said line of credit portion of said integrated account after the depositing of said funds into said checking account; and
>
> providing means associated with said integrated account for the withdrawal of funds from said integrated account by said mortgage holder by transferring funds from said line of credit account portion of said integrated account to said checking account portion to fund said withdrawals.

(*Id.* at col. 4, ll. 48-65, col. 5, ll. 1-4.)

Claim 4, a dependent method claim, describes:

The method of claim 3, wherein the step of providing means for the withdrawal of funds includes the step of providing means for the withdrawal of funds up to the line of credit of said account.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

(*Id.* at col. 5, ll. 5-8.)

Claim 5, a dependent method claim, describes:

The method of claim 4, including the step of determining the amount of money that would be saved by said mortgage holder in paying down said mortgage in an expedited manner prior to depositing funds into the said integrated account.

(*Id.* at col. 5, ll. 9-12.)

Claim 6, a dependent method claim, describes:

The method of claim 5, wherein the step of determining the amount of money includes the step of factoring in the current monthly income of said mortgage holder, the anticipated monthly debts other than said mortgage of said mortgage holder, and miscellaneous other monthly expenses anticipated by said mortgage holder to determine the approximate amount of money that would be saved by said mortgage holder on a monthly basis compared to other popular mortgage financing approaches.

(*Id.* at col. 5, ll. 13-21.)

Claim 7, a dependent system claim, describes:
The system of claim 1 including interest payment means associated with said integrated account for paying off the interest incurred on said mortgage balance automatically from the line of credit account of said integrated account.

(*Id.* at col. 5, ll. 22-25.)

Claim 8, a dependent system claim, describes:

The system of claim 7 wherein said interest payment means includes means for increasing the balance of said line of credit in said line of credit account to automatically pay off said interest due.

(*Id.* at col. 5, ll. 26-29.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

Claim 9, a dependent method claim, describes:

The method of claim 3 including the step of paying off the interest incurred on said mortgage balance automatically from line of credit portion of said integrated account.

(*Id.* at col. 5, ll. 30-32.)

Claim 10, a dependent method claim, describes:

The method of claim 9 including the step of increasing the balance of said credit line to pay off said interest.

(*Id.* at col. 5, ll. 33-34.)

Claim 11, an independent system claim, describes:

A system for providing a checking account and an integrated line of credit account to a mortgagee, comprising:

an integrated account consisting of a line of credit mortgage account loan with a dedicated checking account comprised of funds periodically deposited therein by said mortgagee;

said line of credit mortgage account loan secured by a property of the mortgagee and having a line of credit account balance based on the equity said mortgagee has in the predetermined value of the mortgagee's property;

said dedicated checking account having a checking account balance independent of said line of credit account balance and receiving funds deposited into said integrated account;

mortgage payment means associated with the integrated account paying down the line of credit mortgage loan balance of said mortgagee automatically upon depositing of funds into said integrated checking account therein by transferring the deposited funds from the checking account to the line of credit mortgage

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

> account to debit the checking account balance by the amount of funds
> automatically moved and crediting the line of credit account balance;
>
> fund withdrawal means associated with the integrated account for paying other
> living expenses by automatically transferring funds from said line of credit account
> to said checking account to fund withdrawals or debits from said checking account
> other than to pay down said line of credit mortgage account to credit the checking
> account balance and debit the line of credit account balance by said transfer
> amount.

(*Id.* at col. 6, ll. 1-32.)

We note that Plaintiff attempts to raise genuine issues of material fact in its Statement of
Genuine Issues.  We find, however, that Plaintiff's attempts in this regard are unavailing, as the
purported disputed facts, *i.e.*, whether the claimed methods and systems can be completed on a
piece of paper or require the use of a specialized banking computer, are insignificantly probative
to a collateral issue or are entirely irrelevant to our § 101 analysis, discussed herein.
Determinations of patent eligibility are questions of law.  *CyberSource Corp. v. Retail
Decisions, Inc.*, 654 F.3d 1366, 1369 (Fed. Cir. 2011); *see also Digitech Image Tech., LLC v.
Elecs. for Imaging, Inc.*, No. 8:12-cv-1324-ODW (MRWx), 2013 WL 3946579, at *9 (C.D. Cal.
July 31, 2013), *aff'd*, __ F.3d __, 2014 WL 3377201 (Fed. Cir. July 11, 2014).

IV.   <u>Discussion</u>

A.   <u>Claim Construction</u>

Plaintiff argues that Defendant's Motion for Summary Judgment is premature
because the Court has not yet performed claim construction.  The Federal Circuit has
characterized claim construction as "an important first step in a § 101 analysis."  *In re Bilski*,
545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593, 130 S. Ct.
3218 (2010).  It is not, however, "an inviolable prerequisite to a validity determination under §
101."  *Bancorp Servs. v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012);
*see Bilski v. Kappos*, 130 S. Ct. at 3231 (finding subject matter ineligible for patent protection,
without performing claim construction).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|----------|------------------------|------|-----------------|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

In this case, ruling on Defendant's Motion for Summary Judgment does not require the Court first to perform claim construction. *See, e.g., Fort Props., Inc. v. Am. Master Lease, LLC,* 671 F.3d 1317 (Fed. Cir. 2012) (affirming granting summary judgment under §101 without any discussion of claim construction). The '509 Patent's eleven Claims are sufficiently straightforward that claim construction is not necessary to understand their content. *See, e.g., Lumen View Tech. v. Findthebest.com, Inc.,* 984 F. Supp. 2d 189, 205 (S.D.N.Y. 2013) (finding claim construction unnecessary to underdo before analyzing claims under § 101 because claims at issue were straightforward, covered broad subject matter categories, and "[n]o components are opaque such that claim construction would be necessary to flush out its contours."). Claim construction would not assist the Court in resolving the § 101 issue. As discussed herein, under any reasonable construction, even those constructions preferred by Plaintiff, the '509 Patent is invalid under § 101.

B.     Patentability

Claims of an issued United States patent are presumed valid. *See* 35 U.S.C. § 282(a). "A party seeking to establish that particular claims are invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence." *State Contracting & Eng'g Corp. v. Condotte Am., Inc.,* 346 F.3d 1057, 1067 (Fed. Cir. 2003). "Although an exact definition is elusive, 'clear and convincing evidence' has been described as evidence that 'place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable.'" *Pfizer, Inc. v. Apotex, Inc.,* 480 F.3d 1348, 1359 n.5 (Fed. Cir. 2007) (quoting *Colorado v. New Mexico,* 467 U.S. 310, 316 (1984)).

Under § 101 of the Patent Act, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor . . ." 35 U.S.C. § 101. One may not obtain a patent for "laws of nature, physical phenomena, [or] abstract ideas." *Bilski,* 130 S. Ct. at 3225 (citations omitted).

"Whether a claim is drawn to patent-eligible subject matter under § 101 **is a threshold inquiry[.]**" *In re Bilski,* 545 F.3d at 950. **If a claim is not drawn to patent-eligible subject matter, it "must be rejected even if it meets all of the other legal requirements of patentability."** *Id.* **As stated above, the determination of whether a claim is drawn to**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

patent-eligible subject matter is a pure question of law. *CyberSource*, 654 F.3d at 1369; *In re Bilski*, 545 F.3d at 951 (**patent validity under** § 101 **is an "issue of law"**).

In the instant Motion, Defendant argues that the Claims of the '509 Patent do not meet the coarse eligibility filter of § 101 because they fail the machine-or-transformation test. (*See* Mot. at 16-18.) Alternatively, Defendant argues that the claims are not patentable and because they are directed to the abstract idea of paying down a loan when funds are available and then borrowing additional funds later when they may be needed, which is not patentable. (*Id.* at 10-16, 18-22.) We evaluate each argument in turn.

Before we turn to Defendant's arguments, however, we note that the '509 Patent contains both system and method claims. (*See* '509 Patent.) Comparing the language of the systems claims with that of the method claims, it is clear that these are functionally identical. "The only difference between the claims is the form in which they were drafted." *Bancorp Servs.*, 687 F.3d at 1277. Thus, they must be treated as equivalent for purposes of the § 101 analysis. *See id.* (affirming decision to treat similarly-worded system and method claims at issue as equivalent in the § 101 analysis); *Diamond v. Diehr*, 450 U.S. 175, 188 (1981) ("In determining the eligibility of respondent's claimed process for patent protection under § 101, their claims must be considered as a whole."); *Parker v. Flook*, 437 U.S. 584, 593 (1978) (rejecting argument for patentability that "would make the determination of patentable subject matter depend simply on the draftman's art . . . .").

### i.    *Machine-or-Transformation Test*

As discussed in *Bilski*, one method of determining patent eligibility under § 101 is known as the machine-or-transformation test. *See Bilski*, 130 S. Ct. at 3225. Under this test, an invention is a patent-eligible "process" only if: "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Id.* While it is no longer the exclusive test for assessing eligibility under §101, the machine-or-transformation test remains an investigative tool for determining patentability. *See id.* at 3227. Regardless of the method used to evaluate a patent under § 101, "[t]he vast number of claims pass this coarse eligibility filter." *See DealerTrack, Inc. v. Huber*, 674 F.3d 1315, 1331 (Fed. Cir. 2012).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

Because Plaintiff appears to concede that the Claims of the '509 Patent do not meet the "transformation" prong of the *Bilski* test, the Court applies only the "machine" prong of the test. *See Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1309 (Fed. Cir. 2006) (holding that summary judgment is proper where a patentee "fail[s] to set forth any argument or evidence" in response to an accused infringer's motion for summary judgment); *USA Petroleum Co. v. Atl. Richfield Co.*, 13 F.3d 1276, 1284 (9th Cir. 1994) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived . . . .") (citation omitted).

Turning to the machine prong, the claims must recite a tie to a particular machine. *Bilski*, 130 S. Ct. at 3225. The Federal Circuit has "defined a 'machine' as 'a concrete thing, consisting of parts, or of certain devices and combination of devices. This includes every mechanical device or combination of mechanical powers and devices to perform some function and produce a certain effect or result.'" *SiRF Tech, Inc. v. Int'l Trade Comm'n.*, 601 F.3d 1319, 1332 (Fed. Cir. 2010) (citations omitted). Plaintiff argues that the asserted Claims of the '509 Patent are necessarily tied to a particular machine: a "specially-programmed banking computer." (*See* Opp'n.) However, as discussed below, because the '509 Patent never even mentions a computer, let alone a specially-programmed banking computer, in the Claims or the specification, the Court finds these arguments without merit.

First, Plaintiff argues that the use of a specially-programmed banking computer is implied from the language of the Patent. According to Plaintiff, "[t]he fact that patent claims do not explicitly state that the invention is computer-implemented does not render the patent invalid for being drawn to an abstract idea in violation of Section 101." (*See* Opp'n at 12.) However, in three of the cases cited by Plaintiff to support this proposition, the courts found reference to a particular machine, either in the patent claims or in the specification. *See Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 862, 868-69 (Fed. Cir. 2010) (identifying a "digital data processor" in the specification, and "film printer," "memory," and "printer and display devices" in the claims); *SiRF*, 601 F.3d at 1333 ("[w]e hold that the claims at issue are properly directed to patentable subject matter as they explicitly require the use of a particular machine (a GPS receiver) and could not be performed without the use of such a receiver"); *Advanced Software Design Corp. v. Fiserv, Inc.*, No. 4:07-CV-185 CDP, 2012 WL 1684495, at *6 (E.D. Mo. May 15, 2012) (identifying a "scanner" and a "data processing device" in the claim language). Unlike those cases, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

'509 Patent makes *no* mention of any machine, either in the Claims as Plaintiff construes them or in the specification. While Plaintiff also cites *Innova Patent Licensing, LLC v. Alcatel-Lucent Holdings*, No. 2:10-CV-251, 2012 WL 2958231 (E.D. Tex. July 19, 2012), to show that one court has found that a patent as drawn to patentable subject matter although the claims only implied the presence of computer hardware, the Court finds this case at odds with *Bilski*'s requirement that a claim be "tied to a particular machine" and we decline to follow *Innova*. *See Innova*, 2012 WL 2958231, at *4. Moreover, the Court notes that *Innova* relied in part on *Ultramercial, LLC v. Hulu, LLC*, 657 F.3d 1323, 1328 (Fed. Cir. 2011), which was vacated and remanded following the Supreme Court's decision in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. __, 132 S. Ct. 1289 (2012). Finally, the failure of the '509 Patent to recite a machine in the Claims or specification demonstrates that it does not meet the machine-or-transformation test. *See, e.g., In re Ferguson*, 558 F.3d 1359, 1364 (Fed. Cir. 2009) ("Although Applicants argue that the method claims are tied to the use of a shared marketing force, a marketing force is not a machine or apparatus, . . . Applicants' method claims are not tied to any concrete parts, devices, or combination of devices.").

Second, Plaintiff argues that because the Claims make use of the word "automatic," this necessarily requires the use of a specially-programmed banking computer. Contrary to Plaintiff's argument, the use of the word "automatic" in claim terms is not sufficient to satisfy the machine-or-transformation test. *See, e.g., OIP Techs., Inc. v. Amazon.com, Inc.*, No. C-12-1233 EMC, 2012 WL 3985118 (N.D. Cal. Sept. 11, 2012). In *Amazon*, the court found a patent invalid under § 101 because it covered non-patent eligible subject matter. *Id.* at *1. The court analyzed a "method and apparatus for automatic pricing in electronic commerce" and found that even though the invention required the use of a computer for "automated testing and selection of prices for goods and services sold online," this did not garner patentability because the claim did not identify a "*specific* machine." *Id.* *13 (emphasis in original). Further, the court found, "the fact that claims may require implementation on a computer does not demonstrate that the claim satisfies the [machine-or-transformation test]." *Id.* The court noted that "[w]hile running a particular process on a computer undeniably improves efficiency and accuracy, cloaking an otherwise abstract idea in the guise of a computer-implemented claim is insufficient to bring it within section 101." *Id.* at *15 (citation omitted). We adopt this reasoning and find Plaintiff's reliance on the word "automatic" to be misplaced.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

  **Third, Plaintiff argues that because the '509 Patent involves automatic transfers, direct deposit, electronic transfers, unlimited checking, ATM access, point-of-sale access, online bill payment, and online account access, a specially-programmed banking computer is required. This argument is unavailing because merely reciting "ties to the physical world" does not make an otherwise abstract claim patentable.** *See, e.g., Fort Props., Inc. v. Am. Master Lease, LLC*, **671 F.3d 1317, 1322 (Fed. Cir. 2012) ("Fort Properties counters that under** *Bilski*, **the invention's intertwinement with deeds, contracts, and real property does not transform the abstract method into a patentable process. We agree with Fort Properties.");** *Cardpool, Inc. v. Plastic Jungle, Inc.*, **No. 12-4182 WHA, 2013 WL 245026, at \*1 (N.D. Cal.  Jan. 22, 2013) (finding the idea of exchanging gift cards abstract even where the plaintiff claimed the use of a computer, specifically through a kiosk, personal computer, and device).**

  **Finally, Plaintiff argues that the Claims are tied to a specially-programmed banking computer because David Zacharias, Plaintiff's expert, suggests that one of ordinary skill in the art would understand the Claims to require the use of a specially-programmed banking computer.  (***See* **Opp'n at 6, 10, 15; Zacharias Decl. at ¶ 12.)  To support its argument, Plaintiff cites** *Energy Transp. Grp., Inc. v. William Demand Holding A/S, WDH, Inc.*, **697 F.3d 1342 (Fed. Cir. 2012), for the proposition that "the words of a claim 'are generally given their ordinary and customary meaning' . . . that the term would have to a person of ordinary skill in the art in question at the time of the invention."** *Energy Transp. Grp.*, **697 F.3d at 1349 (citation omitted).  While we agree with the general proposition espoused in** *Energy Transportation Group*, **Plaintiff's argument is unavailing because nowhere in its claim construction briefing does Plaintiff suggest that the Claims should be construed to include the use of a specially-programmed banking computer.  Plaintiff's Amended Opening Claim Construction Brief mentions that one skilled in the art would understand the claim terms "funds withdrawal limiting means for allowing said withdrawal from said line of credit account up to said line of credit limit" and "mortgage payment means" to require the use of a specially programmed banking computer.  (***See* **Dkt. No. 62 at 34, 39.) However, Plaintiff does not construe any of the Claims to include a reference to a specially-programmed banking computer; its proposed constructions only include "software-implemented instructions" and do not make reference to any machine.[3]  (***Id.***)**

---

[3] Construing all Claims in a light most favorable to Plaintiff, the non-moving party, but without performing claim construction, the Court adopts Plaintiff's proposed claim constructions for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

       **The use of software-implemented instructions appears throughout Plaintiff's proposed constructions, as follows:**

| Claim Term | Plaintiff's Proposed Construction |
|---|---|
| **"Mortgage Payment Means" (Claims 1, 11)** | **"Software-implemented instruction(s) to make mortgage payments by debiting the checking account balance and crediting the line of credit account balance upon receiving a deposit in the checking account"** |
| **"Means for moving said funds" (Claim 1)** | **"Software-implemented instructions to automatically transfer funds from the checking account to the line of credit account after receiving a deposit in the checking account"** |
| **"Means . . . allowing withdrawal of funds," "means . . . for the withdrawal of funds," and "fund withdrawal means" (Claims 1, 2)** | **"Any one or any combination of ATM cards, point-of-sale cards, electronic fund transfers, computer networks comprising online bill payment systems, personal checks, online access, or software-implemented instructions."** |
| **"Funds withdrawal limiting means for allowing said withdrawal from said line of credit account up to said line of credit limit" and "means for the withdrawal of funds up to the line of credit of said account" (Claim 2)** | **"Software-implemented instructions to limit the withdrawal of funds from the line of credit up to the line of credit limit."** |
| **"Interest payment means" (Claims 7, 8)** | **"Software-implemented instructions for effectuating interest payments on the balance of the line of credit account."** |
| **"Means for increasing the balance of said line of credit" (Claim 8)** | **"Software-implemented instructions for increasing the balance of the line of credit account upon automatically making an** |

purposes of this analysis. *CyberSource*, 620 F. Supp. 2d at 1073.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

interest payment."

   Even construing the Claims to include "software-implemented instructions," the Claims are not directed to patentable subject matter under the machine-or-transformation test because where a claim recites "software-implemented instructions" but does not tie them to a particular machine, the patent is invalid under § 101.  In *Ex Parte Aikens*, No. 2009-6565, 2011 WL 3666751, at *1 (B.P.A.I. Aug. 18, 2011), the Board of Patent Appeals and Interferences ("the Board") thoroughly analyzed the impact of *Bilski* on the patentability of a system, method, and machine readable storage for identifying and configuring metric components for incorporation into a Service Level Agreement managed by a Service Level Management system.  *Ex Parte Aikens*, 2011 WL 3666751  at *1.  The appellants argued that they satisfied the machine-or-transformation test because, *inter alia*, "[a] process . . . realized in software must necessarily employ the use of a computer." *Id.* at *2.  The Board noted that abstract software without a physical embodiment is not patentable.  *See id.* at *12 (citing *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 449 (2007)). It also explained that "[a] claim that recites no more than software, logic, or a data structure (*i.e.*, an abstract idea) – with no structural tie or functional interrelationship to an article of manufacture, machine, process, or composition of matter" is not patentable subject matter.  *Id.* (citing *In re Warmerdam*, 33 F.3d 1354, 1361 (Fed. Cir. 1994)). Importantly, the Board recognized that software that was not tied to a particular medium was not patentable because it was not "capable of causing a functional change in a computer."  *Id.*  The Board also explained that computer instructions, or "software per se" were necessarily only an abstract idea where they were not explicitly tied to any particular machine.  *Id.* at *15.  The Board further held that a claim reciting that "processors are 'programmed' adds no meaningful limit to the claims ['] scope – the processors (software modules) simply are capable of performing the recited functions when executed by a computer.  Accordingly, the processors are also software, an abstract idea."  *Id.* at *18; *see also Ex Parte Lake*, No. 2009-7077, 2011 WL 1345317, at *7 (B.P.A.I. Apr. 6, 2011) ("Appellant's claims also constitute non-statutory subject matter because they consist of purely functional recitations that may be implemented by software, and as such are merely a set of instructions capable of being executed by a computer – *i.e.*, 'software per se' or 'data structures per se.'"); *Ex Parte Fatula*, No. 2009-7432, 2010 WL 3523836, at *4 (B.P.A.I. Sept. 8, 2010) (noting that "no true apparatus in a hardware sense" was disclosed where the claims were directed only to "software instructions" for an apparatus, system,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

and method for autonomic management of data operations and performance resources on a grid computing system).

Further, even if the Court construed the '509 Patent to require the use of a computer, the "software-implemented instructions" provide no meaningful limit on the claims. In *CyberSource*, where the patent had claimed the use of a general purpose computer, the court analyzed "software instructions" that used software to verify the validity of a credit card transaction over the Internet. *CyberSource*, 654 F.3d at 1370. The court determined that the collection and organization of credit card numbers and Internet addresses did not require the method to be performed by a particular machine, or even a machine at all. *Id.* The court noted:

> As a general matter, programming a general purpose computer to perform an algorithm creates a new machine, because a general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software. But we have never suggested that simply reciting the use of a computer to execute an algorithm that can be performed entirely in the human mind falls within the *Alappat* rule.

*Id.* at 1375. (internal quotations and citations omitted). The court recognized that the patent was so broad that even a person who suspected fraud by noticing that multiple transactions from different credit cards had all emanated from one IP address could be infringing. *Id.* at 1372.

Like in *CyberSource*, Plaintiff is attempting to claim that an abstract method is patentable merely because a computer will use "software-implemented instructions" to perform the steps of the methods and systems. Even in Plaintiff's proposed claim constructions, however, the Claim language is sufficiently broad that anyone performing the steps identified in the Claims would violate the '509 Patent if they used *any* software-implemented instructions on *any* machine to perform those tasks. The '509 Patent does not claim any particular software, nor any specific machine. Thus, as in *CyberSource*, "the basic character of a process claim drawn to an abstract idea is not changed by claiming only its performance by computers, or by claiming the process embodied in program instructions on a computer readable medium." *Id.* at 1375.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

      Plaintiff attempts to distinguish *CyberSource* by arguing that the Claims require the use of a computer.  While *CyberSource* recognized that one could not patent program instructions that could be performed in the human mind, it did not conversely hold that where calculations require the use of a computer, program instructions *are* necessarily patentable.  While there are courts that have interpreted *CyberSource* to stand for the proposition that where a computer is required to perform certain steps, a programmed computer is patentable, those cases were called into question when the Supreme Court issued its ruling in *Mayo.  See Ultramercial*, 657 F.3d at 1330 ("Unlike the claims in *CyberSource*, the claims here require, among other things, controlled interaction with a consumer via an Internet website, something far removed from *purely* mental steps."); *Island Intellectual Prop. LLC v. Deutsche Bank AG*, No. CV 09-2675 KBF, 2012 WL 386282, at *8 (S.D.N.Y. Feb. 6, 2012) ("Critical to plaintiffs' claims therefore are exchanges explicitly recognized by the Federal Circuit as taking methods outside of *CyberSource* and 'far removed from purely mental steps.'  Defendants have also failed to put forth evidence to show that the claimed processes could in fact be performed mentally – or that anyone has ever done so."); *VS Techs., LLC v. Twitter, Inc*., No. 2:11-CV-43, 2011 WL 4744911, at *4-6 (E.D. Va. Oct. 5, 2011) (concluding that the patentee presented sufficient evidence that a jury could find that the claims were tied to a particular machine (a computer), were not abstract ideas, could not necessarily be done in a person's mind, and did transform an article by creating real time communications).

      Importantly, cases following *Mayo* have recognized that even where a computer limitation is present, the claims remain patent ineligible where the computer implementation does not impose meaningful limits on the scope of the claims.  *See Fort Props.*, 671 F.3d at 1322-24 (finding that claims that required the use of a computer to generate "deedshares," as one of the method steps were patent ineligible because the computer limitation did not impose meaningful limits on the method); *Cardpool*, 2013 WL 245026, at *4 ("[E]ven assuming, *arguendo*, that every step in the patent were implemented with a computer, or the magic of the [I]nternet, the invention is unpatentable.  Plaintiff's attempt to 'inextricably intertwine' the claim terms with computerized application is unavailing.").  Indeed, *CyberSource* and its progeny support Defendant's argument that the Claims are not patentable merely because they purport to require software instructions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

Similarly, in *Glory Licensing LLC v. Toys R Us, Inc.*, No. 09-4252 (FSH), 2011 WL 1870591 (D.N.J. May 16, 2011), the court recognized that programming instructions are not a meaningful limitation. The court analyzed a system for processing information from a template file to an application program using "content instructions" and "customizable transmission format instructions" on a programmed computer. *Id.* at *2. The court determined that the programmed computer did not constitute a machine under the machine-or-transformation test because it did not impose meaningful limits on the execution of the claimed method steps. *Id.* at *3. The court also discounted the plaintiff's arguments that "content instructions" and "customizable transmission format instructions" converted a general purpose computer into a special purpose machine. *Id.* Specifically, the court noted that the "patent contains no information that defines these generic terms or sheds any light on what the instructions entail, nor who programs them according to what specifications." *Id.*; *see also SmartGene, Inc. v. Advanced Biological Labs., SA*, 852 F. Supp. 2d 42, 59 (D.D.C. 2012) ("While the claims reference a "computing device," these references are insufficient to satisfy the machine test. The defendants argue that 'the figures and specification specify how the computer is to be specially programmed to implement the method covered by the Asserted Claims,' but the Court is not persuaded. The patents-in-dispute include no special programming code, nor provide any specific algorithms that the computers would use to perform the database matching or synthesis of expert rules, advisory information, treatment regimens, and patient information.")

Like in *Glory Licensing*, none of the Claims here actually describe any particular software, how it is designed, who designed it, or how it achieves the identified tasks. For example, Claim 1 describes a system for integrating a mortgagor's line of credit mortgage account and checking account while paying off the mortgage loan balance of the mortgagor. (*See* '509 Patent at col. 4, ll. 6-42.) Based on Plaintiff's preferred constructions, Claim 1 involves software-implemented instructions to make mortgage payments and automatically transfer funds in a way that incorporates ATM cards, point-of-sale cards, electronic fund transfers, computer networks comprising online bill payment systems, personal checks, online access, or software-implemented instructions. *See id.* Claim 11 describes a system that provides a checking account and an integrated line of credit account to a mortgagor. (*Id.* at col. 6, ll. 1-32.) Plaintiff's construction of Claim 11 includes "[s]oftware-implemented instruction(s) to make mortgage payments by debiting the checking account balance and crediting the line of credit account balance upon receiving a deposit in the checking account." (*See* Dkt. No. 62, at 32.) Each Claim simply

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

**cites an abstract idea (*i.e.*, making mortgage payments and automatically transferring funds) and states that it will be achieved via software-implemented instructions. If the '509 Patent actually described the software-implemented instructions, or described a particular machine onto which these software-implemented instructions were programmed, this may confer patentability. However, one cannot merely claim that an abstract idea is tied to a machine by stating that the abstract steps will be performed via software instructions.**

**The '509 Patent fails to satisfy the machine-or-transformation test because nowhere in the Claims or specification does it recite the use of a particular machine, or any machine. Even when construing the Claims to include "software-implemented instructions," the presence of such instructions alone is not sufficient to confer patentability. A particular machine that has been programmed with software may be patentable; however, claims reciting software-implemented instructions in the abstract are not. Further, even assuming the presence of a computer, Plaintiff has failed to impose meaningful limitations on the Claims such that a specific machine is identified. Thus, the Claims are not patentable pursuant to the machine-or-transformation test.**

### ii.    *Abstract Idea*

As mentioned above, the machine-or-transformation test, while an "important and useful clue," is not a dispositive test for patent eligibility. *Bilski*, 130 S. Ct. at 3226. Beyond the machine-or-transformation test, courts have examined precedent to determine whether an invention falls within one of the exceptions to § 101's broad eligibility. *See id.* at 3219 ("Rather than adopting categorical rules that might have wide-ranging and unforeseen impacts, the Court resolves this case narrowly on the basis of this Court's [prior] decisions."). Reviewing precedent for additional guidance beyond the machine-or-transformation test, the Court finds the Claims are directed at non-patentable subject matter.

### a.    *Supreme Court's Abstract Idea Jurisprudence*

In *Gottschalk v. Benson,* 409 U.S. 63 (1972), the court invalidated a patent for a method of programming a general purpose computer to convert binary-coded decimal ("BCD") numerals into pure binary code, concluding that the patent claimed nothing more than a patent-ineligible scientific truth or law of nature. *Id.* at 64, 72-73. The court noted that a "novel and useful structure created with the aid of knowledge of scientific truth" could be patent-eligible. *Id.* at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

67 (internal quotation marks and citation omitted). The court determined, however, that the patent at issue claimed nothing more than a mathematical formula implemented on a generic computer, and thus was invalid under § 101. *See id.* at 68. The court reasoned that the claims were "so abstract and sweeping as to cover both known and unknown uses of the BCD to pure binary conversion" and that allowing the patent "would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself." *Id.* at 68-69, 72. Moreover, "[t]he mathematical formula involved here has no substantial practical application except in connection with a digital computer." *Id.* at 71. This, the court explained, would be tantamount to a patent on an idea itself, and could not be maintained under the Patent Act. *See id.* at 71-72.

Six years later, in *Parker v. Flook,* 437 U.S. 584 (1978), the court considered a patent claiming a method for updating "alarm limits" for operating conditions during the catalytic conversion process, such as temperature, pressure, and flow rates. *Id.* at 585. Applying *Benson,* the court held that the claimed process was directed at a non-patentable mathematical formula. The court explained that "[t]he only difference between the conventional methods of changing alarm limits and that described in [the] application ... [is] the mathematical algorithm or formula." *Id.* at 586-87. Thus, "the claims did not describe a discovery that was eligible for patent protection." *Id.* at 587. The court rejected the petitioner's argument "that the presence of specific 'post-solution' activity – the adjustment of the alarm limit to the figure computed according to the formula – distinguishes this case from *Benson* and makes this process patentable." *Id.* at 590. The court reasoned that "post-solution activity, no matter how conventional or obvious in itself, can [not] transform an unpatentable principle into a patentable process." *Id.* To be patentable, "[t]he process itself, not merely the mathematical algorithm, must be new and useful." *Id.* at 591.

In *Diamond v. Diehr,* 450 U.S. 175 (1981), the court applied *Benson* and *Flook* to uphold a patent claiming a "process for curing synthetic rubber which includes in several of its steps the use of a mathematical formula and a programmed digital computer." *Id.* at 177. Although, like the patents invalidated in *Benson* and *Flook,* the patent application in *Diehr* involved a well-known mathematical formula (the Arrhenius equation), the court reasoned that, unlike in *Benson* and *Flook,* the claims in the *Diehr* patent "do not seek to pre-empt the use of that equation. Rather, they seek only to foreclose from others the use of that equation in conjunction with all of the other steps in their claimed process," such as "installing rubber in a press, closing the mold, constantly determining the temperature of the mold, constantly recalculating the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

appropriate cure time through the use of the formula and a digital computer, and automatically opening the press at the proper time." *Id.* at 187. These additional steps rendered the claims patentable as "an *application* of a law of nature or mathematical formula to a known structure or process." *Id.* at 187-88 (emphasis in original). Although "Arrhenius' equation is not patentable in isolation," the court explained, "when a process for curing rubber is devised which incorporates in it a more efficient solution of the equation, that process is at the very least not barred at the threshold by § 101." *Id.* at 187-88. The court held as follows:

> A mathematical formula as such is not accorded the protection of our patent laws, *Gottschalk v. Benson,* 409 U.S. 63, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972), and this principle cannot be circumvented by attempting to limit the use of the formula to a particular technological environment. *Parker v. Flook,* 437 U.S. 584, 98 S.Ct. 2522, 57 L.Ed.2d 451 (1978). Similarly, insignificant post-solution activity will not transform an unpatentable principle into a patentable process. *Ibid.* To hold otherwise would allow a competent draftsman to evade the recognized limitations on the type of subject matter eligible for patent protection. On the other hand, when a claim containing a mathematical formula implements or applies that formula in a structure or process which, when considered as a whole, is performing a function which the patent laws were designed to protect (*e.g.,* transforming or reducing an article to a different state or thing), then the claim satisfies the requirements of § 101.

*Id.* at 191-92 (footnotes omitted).

In 2010, the *Bilski* court considered a challenge to a patent for a method by which buyers and sellers of commodities could protect, or hedge, against risk of price changes. *See Bilski,* 130 S. Ct. at 3223. Claim 1 of the invention required the following steps:

> Initiating a series of transactions between a commodity provider and consumers whereby the consumers purchase the commodity at a certain rate;
>
> Identifying market participants for the commodity having a counter-risk position to the consumers; and
>
> Initiating a series of transactions between the commodity provider and the market participants at a second rate in a manner that permits the market participant transactions to balance the risk position of the consumer transactions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

*Id.* at 3223-24.  Claim 4 incorporated the steps listed in claim 1 into a mathematical formula.  *Id.* at 3223.  The remaining claims at issue in *Bilski* explained how claims 1 and 4 could be applied in the energy market.  *Id.* at 3224.

The court concluded that the claims at issue in *Bilski* did not satisfy the requirements of § 101.  *Id.* at 3229-30.   Specifically, the court reasoned that claims 1 and 4 merely explained the basic concept of hedging, which "is an unpatentable abstract idea."  *Id.* at 3231.  "Allowing petitioners to patent risk hedging would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea."  *Id.*  Regarding the remaining claims, which were confined to the energy market, the court explained that "limiting an abstract idea to one field of use or adding token postsolution components [does] not make the concept patentable."  *Id.*  Thus, these claims were also characterized as abstract and ineligible for patent protection.  *Id.*

Two years later, in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 566 U.S. __, 132 S. Ct. 1289 (2012), the court drew a line between patent-ineligible concepts and patent-eligible applications of those concepts.  At issue in *Mayo* were "patent claims covering processes that help doctors who use thiopurine drugs to treat patients with autoimmune diseases determine whether a given dosage level is too low or too high. The claims purport[ed] to apply natural laws describing the relationships between the concentration in the blood of certain thiopurine metabolites and the likelihood that the drug dosage will be ineffective or induce harmful side-effects."  *Id.* at 1294.  Drawing on *Benson, Flook, Diehr,* and *Bilski,* the *Mayo* Court reaffirmed that "a process is not unpatentable simply because it contains a law of nature or a mathematical algorithm."  *Id.* at 1293 (internal quotation marks and citations omitted).  The court explained that although a law of nature or mathematical formula itself is not patent-eligible, "'an *application* of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection.'"  *Id.* (quoting *Diehr,* 450 U.S. at 187).  The court emphasized, "to transform an unpatentable law of nature into a patent-eligible *application* of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'"  *Id.* at 1294.

The court then set out a two-part framework for distinguishing between patent-ineligible concepts (*i.e.,* laws of nature, natural phenomena, and abstract ideas) and patent-eligible applications of those concepts.  First, a court must determine whether the claims are directed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

toward laws of nature, natural phenomena, or abstract ideas. *Id.* If so, the court must ask if there is something else in the claims, *i.e.*, an "inventive concept," sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* Applying that framework, the court determined at step one that the claimed process was directed to a patent ineligible concept because it was equivalent to a law of nature, "namely, relationships between concentrations of certain metabolites in the blood and the likelihood that a dosage of a thiopurine drug will prove ineffective or cause harm." *Id.* at 1296. Moreover, the court reasoned, "upholding the patents would risk disproportionately tying up the use of the underlying natural laws, inhibiting their use in the making of further discoveries." *Id.* at 1294. Proceeding to step two, the court held that the combination of steps recited in the patent application was not enough to render the claimed process a novel *application* of the law of nature. It reasoned that "the steps in the claimed processes (apart from the natural laws themselves) involve well-understood, routine, conventional activity previously engaged in by researchers in the field," *id.,* and "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable," *id.* at 1300. Accordingly, the court held that the claimed process was patent-ineligible.

Most recently, in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. __, 134 S. Ct. 2347 (2014), the court considered a patent claiming "a method of exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement risk," in which "[t]he intermediary creates and updates 'shadow' records to reflect the value of each party's actual accounts held at 'exchange institutions,' thereby permitting only those transactions for which the parties have sufficient resources." *Id.* at 2356. To determine whether the patent claimed a patent-eligible process, the court applied the two-step framework articulated in *Mayo*. At step one, the court held that "[i]t follows from our prior cases, and *Bilski* in particular, that the claims at issue here are directed to an abstract idea." *Id.* The court explained that "[l]ike the risk hedging in *Bilski*, the concept of intermediated settlement is 'a fundamental economic practice long prevalent in our system of commerce'" and "[t]he use of a third-party intermediary . . . is also a building block of the modern economy"; "[t]hus, intermediated settlement, like hedging, is an 'abstract idea' beyond the scope of § 101." *Id.* The court emphasized that to constitute an "abstract idea" under its jurisprudence, a claim need not be addressed to a "preexisting, fundamental truth," such as a law of nature or mathematical formula; as in *Bilski*, a "method of organizing human activity" may be impermissibly abstract if it is grounded in a fundamental practice. *Id.* at 2356-57.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

At step two of the *Mayo* analysis, the court explained, "the relevant question is whether the claims . . . do more than simply instruct the practitioner to implement the abstract idea of intermediated settlement on a generic computer." *Id.* at 2359. The representative method claim at issue in *Alice Corp.* recited the following steps: (1) "creating" shadow records for each counterparty to a transaction; (2) "obtaining" start-of-day balances based on the parties' real-world accounts at exchange institutions; (3) "adjusting" the shadow records as transactions are entered, allowing only those transactions for which the parties have sufficient resources; and (4) issuing irrevocable end-of-day instructions to the exchange institutions to carry out the permitted transactions. *Id.* Analyzing each element of the method claim separately, the court held that "the function performed by the computer at each step of the process is '[p]urely conventional,'" and thus could not qualify as an "inventive concept." *Id.* at 2359 (quoting *Mayo,* 132 S. Ct. at 1299). The Court explained that using a computer "to create and maintain 'shadow accounts'" is commensurate with "electronic recordkeeping – one of the most basic functions of a computer"; likewise "use of a computer to obtain data, adjust account balances, and issue automated instructions" amounts to "'well-understood, routine, conventional activit[ies]' previously known to the industry." *Id.* (quoting *Mayo,* 132 S. Ct. at 1299). Accordingly, "each step does no more than require a generic computer to perform generic computer functions." *Id.* The court then considered the computerized steps as an "ordered combination," and held that considering the claims as a whole "'add[ s] nothing ... that is not already present when the steps are considered separately.'" *Id.* (quoting *Mayo,* 132 S. Ct. at 1298) ("Viewed as a whole, petitioner's method claims simply recite the concept of intermediated settlement as performed by a generic computer."). "Under our precedents," the court explained, "that is not 'enough' to transform an abstract idea into a patent-eligible invention." *Id.* at 2359-60 (citation and emphasis omitted).

> **b.** *Applying Alice Corp./Mayo Framework*

Applying the foregoing abstract idea jurisprudence, we must first determine whether the claims of the '509 Patent are directed towards a patent-ineligible concept. *See Alice Corp.*, 134 S. Ct. at 2355.

Defendant urges the Court to construe the '509 Patent claims as being directed towards the abstract idea of " the concept of minimizing interest on pending loans by applying balances on other accounts to offset those loans." (Def. Supp. Br. at 5.) In Opposition, Plaintiff argues that the '509 Patent's claims are not directed towards an abstract idea, but rather are "directed to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

specific, narrowly-described methods and systems of structuring and operating integrated accounts." (Pl. Supp. Br. at 4.)

We find that the '509 Patent's eleven Claims are directed at the abstract idea of a mortgagee paying down a mortgage early when funds are available and borrowing funds as needed to reduce the overall interest charged by the mortgage. The Claims are not tied to a specific structure or machine, as discussed at length above. *See Digitech Image Tech. v. Elecs. For Imaging*, __ F.3d __, 2014 WL 3377201, at *4 (Fed. Cir. July 11, 2014) (finding patent at issue "claims an abstract idea because it describes a process of organizing information through mathematical correlations and is not tied to a specific structure or machine."). Specifically, Claim 1 recites the system for integrating a credit mortgage account and a checking account, periodically receiving deposits in a checking account, and transferring funds between accounts. Similarly, Claims 3 and 11 describe associating two accounts together, depositing funds into an account, moving funds between accounts, and withdrawing funds. Claims 2 and 4 require a credit limit on a line of credit, and Claims 7-10 describe the requirement of transferring funds between accounts to reflect the interest charged. These claims merely recite basic, longstanding banking principles. *See Bilski*, 130 S. Ct. at 3218 (finding longstanding economic practice of risk-hedging to be an abstract idea); *Alice Corp.*, 134 S. Ct. at 2356-57 (finding concept of intermediate settlement to be a "fundamental economic practice long prevalent in our system of commerce" and an abstract idea) (citation and quotation marks omitted). Finally, Claims 5 and 6 add the step of determining how much money a customer would save by paying down a mortgage balance early. This is simply an undisclosed mathematical formula, which, like an abstract idea, cannot be patented. *See Benson*, 409 U.S. at 68; *see also Bilski*, 130 S. Ct. at 3231 ("The concept of hedging, described in claim 1 and reduced to a mathematical formula in claim 4, is an unpatentable abstract idea . . .."). None of the elements in these Claims limit the level of their inherent abstraction.

Viewing them independently and taken together with the limitations contained in the dependent claims, the system claims and the method claims "add nothing of substance to the underlying abstract idea" of a mortgagee paying down a mortgage early when funds are available and then borrowing funds as needed, to reduce the total interest paid on the mortgage. *Alice Corp.*, 134 U.S. at 2360 ("the system claims are no different from the method claims in substance," and thus "they too are patent ineligible under § 101."). Accordingly, the '509 Patent's eleven Claims do not recite anything other than abstract ideas.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

Having determined that the Claims are directed at abstract ideas, we next evaluate whether the claims or elements of the claims contain an "inventive concept" capable of transforming the abstract idea into a patent-eligible application of that idea.  *See Alice Corp.*, 134 S. Ct. at 2357.

Plaintiff argues that "[t]he [C]laims of the '509 Patent recite multiple additional elements that, in combination, add up to an 'inventive concept' that is sufficient to transform the alleged 'abstract idea' into a patent-eligible invention."  (Pl. Supp. Br. at 7.)  Plaintiff also argues that the '509 Patent's Claims "improve their technological field" as did the patented claims upheld by the Supreme Court in *Diehr*.  (*Id.* at 7-8 ("As in *Diehr*, the claimed methods and systems provide for constantly monitoring the balances in the different parts of the integrated account and readjusting such balances according to an algorithm through specifically calculated transfers of funds between the two parts of the integrated account, thereby solving practical problems by preventing failed transactions and unnecessary interest expenses.").)  Further, Plaintiff argues that the '509 Patent claims a narrow commercial application that does not prevent the use of any abstract idea in all fields.  (*Id.* at 3-10.)

Looking at the methods and systems claimed, separately and as an ordered combination, *Alice Corp.*, 134 S. Ct. at 2359, the '509 Patent claims the deposit, transfer, and withdrawal of funds to make account balance adjustments, the computation of interest, and calculation of interest savings.  Fundamentally, each of these claimed methods and systems are routine and conventional banking activities; they require the performance of a series of functions already known to, and used regularly in, the banking industry.  *Id.* at 2359-60.  The claimed methods and systems do not transform the claimed abstract ideas into a patent-eligible invention.  *Id.* at 2360.

Moreover, Plaintiff's attempt to construe the '509 Patent in the same light as the patent in *Dierh* is unavailing.  In *Dierh*, the patented invention improved the existing technology for curing rubber.  450 U.S. at 178-79.  The *Dierh* patent applied a known industry formula "to transform[] or reduce[] an article to a different state or thing."  *Id.* at 191-92.  In contrast, here, as in *Alice Corp.*, the '509 Patent's claimed methods and systems do not improve the function of a computer nor do they improve banking technology.  *See Alice Corp.*, 134 S. Ct. 2359 ("The method claims do no, for example, purport to improve the functioning of the computer itself . . . [n]or do they effect an improvement in any other technology or technological field.") (citations omitted).  Instead, the claimed systems and methods simply move money between a mortgagee's bank accounts to minimize mortgage interest charges based on various calculations, which fall well short of actually transforming "an article to a different state or thing," *Diehr*, 450 U.S. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

191-92, demonstrating that the claimed systems and methods do not contain the necessary "inventive concept," *Alice Corp.*, 134 S. Ct. at 2357.

To its detriment, Plaintiff relies on the patent examiner's ultimate approval of the '509 Patent following challenges based on § 101 to argue that the Claims are patentable applications of abstract ideas. Notably, the patent examiner evaluated and approved the Patent prior to *Bilski*, *Mayo*, and *Alice Corp.*, which explains why the patent examiner would have approved the Patent at that time. Had the patent examiner had the benefit of these decisions when evaluating Plaintiff's application, he or she should not have approved it.

Finally, Plaintiff's contention that the '509 Patent's commercial applications render it patent eligible is without merit. Although "inventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act," *Research Corp.*, 627 F.3d at 862-63, in the context of business method patents, like the '509 Patent, courts have invalidated patents directed at abstract ideas despite their commercial applications. *See, e.g., Cybersource*, 654 F.3d at 1372-77 (invalidating patent for method and system for detecting fraud in credit card transactions); *Amazon*, 2012 WL 3985118, at *1 (invalidating patent for an automatic pricing method and apparatus for use in electronic commerce environments); *PerkinElmer, Inc. v. Intema, Ltd.*, 496 F. App'x 65, 66 (Fed. Cir. 2012) (invalidating patent for prenatal non-invasive screening to determine the risk that a fetus has Down's syndrome). We follow these cases in rejecting Plaintiff's argument.

Thus, because none of the Claims at issue meaningfully limit the abstract idea of paying down a mortgage early when funds are available and then borrowing funds as needed to reduce the overall interest charged by the mortgage, the Court finds the claims unpatentable under the Supreme Court's abstract idea jurisprudence as well.

The '509 Patent's eleven Claims fail the machine-or-transformation test and the Supreme Court's abstract idea jurisprudence requires the Court to find the Claims are directed to abstract ideas and are not patentable. Accordingly, Defendant has proven that the '509 Patent is invalid as a matter of law and entry of summary judgment in Defendant's favor is proper.

V.     <u>Conclusion</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#55**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-10344 PSG (MRWx) | Date | August 29, 2014 |
|---|---|---|---|
| Title | CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B. | | |

For the reasons above, Defendant's Motion for Summary Judgment is GRANTED. Defendant shall file a proposed Judgment consistent with this Order that address the claims and counterclaim in this action within fourteen days.

**IT IS SO ORDERED.**